**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

IN RE: LIZZA EQUIPMENT LEASING, LLC,
*et al.*,
                    Debtors.

AZZIL GRANITE MATERIALS, LLC,

          Plaintiff,

     v.

CANADIAN PACIFIC RAILWAY CORPORATION,
DELAWARE & HUDSON RAILWAY COMPANY,
and NEW YORK & ATLANTIC RAILWAY,

          Defendants.

Case No. 19-21763 (MBK)
(Jointly Administered)

Adv. Pro. No. 19-02285 (MBK)

Chapter 11

Hearing Date:  4/23/2020

**Kate Roggio Buck, Esq.**
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
*Counsel for Canadian Pacific Railway*
*Company and Delaware and Hudson*
*Railway Company*

**David Rifkind, Esq.**
Stinson, LLP
1775 Pennsylvania Ave. NW
Suite 800
Washington, D.C. 20006
*Counsel for Canadian Pacific Railway*
*Company and Delaware and Hudson*
*Railway Company*

**Kyle George Kunst, Esq.**
Gallet, Dreyer  Berkey, LLP
845 Third Avenue
5th Floor
New York, NY 10022
*Counsel for New York*
*& Atlantic Railway Company*

**William A. Mullins, Esq.**
Baker & Miller, PLLC
2401 Pennsylvania Ave. NW
Suite 300
Washington, D.C. 20037
*Counsel for New York*
*& Atlantic Railway Company*

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM OPINION**
**GRANTING Defendants' Joint Motion to Dismiss Counts I, II, and III of the Complaint and GRANTING Defendant New York & Atlantic Railway's Motion to Dismiss Count IV of the Complaint**

This matter comes before the Court on two motions to dismiss—the first filed by Defendant New York & Atlantic Railway Company ("NYA") to dismiss Count IV of the Complaint (ECF No. 23), and the second filed jointly by Defendants NYA, Canadian Pacific Railway Company ("CP"), and Delaware & Hudson Railway Company ("D&H") (collectively, "Defendants") seeking dismissal of Counts I, II, and III of the Complaint (ECF No. 24) (hereinafter "Motions"). Plaintiff Azzil Granite Materials, LLC ("Plaintiff" or "Azzil") submitted an Omnibus Opposition (ECF No. 28) to both Motions to Dismiss. The Defendants submitted a Reply (ECF No. 31) in further support of their Joint Motion to Dismiss Counts I, II, and III, and Defendant NYA filed a Reply (ECF No. 32) in support of its Motion to Dismiss Count IV. The Court has reviewed the parties' submissions and has considered fully the arguments presented during oral argument on April 23, 2020. For the reasons set forth below, the Defendants' Motions will be GRANTED and the Complaint will be dismissed without prejudice.[1]

## I.    Background

The factual background and procedural history of this matter are well known to the parties and will not be repeated in detail here. In relevant part, Azzil Granite Materials, LLC is a New

---

[1] The Court is not required to provide findings of fact and conclusions of law for motions premised on FED. R. CIV. P. 12(b). *See* FED. R. BANKR. P. 7052 (incorporating FED. R. CIV. P. 52).

York limited liability company that supplies material to customers throughout the tri-state area.[2]

On or about July 6, 2016, Azzil and Defendant CP entered into a contract (the "Contract").

Pursuant to the Contract, CP and its agent/subsidiary, Defendant D&H, agreed to transport

shipments of Azzil's stone products and return the empty railcars to Azzil.  The Contract requires

Azzil's commitment to ship a minimum volume of 1,500 railcars of product.  The Contract also

provides that CP would move the shipments from the point of origin to Fresh Pond Junction, and

then Defendant NYA would carry Azzil's cars to their final destination.  The contract expired by

its own terms in January, 2019 and on June 19, 2019, Azzil filed a petition for relief under chapter

11.

On November 27, 2019, Azzil commenced the instant adversary proceeding and filed an

Amended Complaint (ECF No. 19) on January 30, 2020.  In the Amended Complaint, Azzil alleges

that the Defendants "failed to transport and delayed transporting railcars carrying Azzil products .

. . over the last two and half years," resulting in substantial losses to Azzil. Am. Compl. ¶ 17, 20,

ECF No. 19.  Azzil seeks relief against all Defendants for alleged violations of the Carmack

Amendment and seeks relief against NYA for fraud.

On March 3, 2020, the two separate Motions were filed in this case.  In one motion, all

Defendants jointly seek dismissal of the claims premised on the Carmack Amendment.  In the

---

[2] The state in which Azzil was formed was a source of confusion.  Azzil's bankruptcy petition reports that its principal place of business is in Hackettstown, NJ. Azzil's Bankr. Pet. 1, Case No. 19-21764 (MBK), ECF No. 1.  However, a section of the petition titled "Written Resolution by Unanimous Written Consent of the Managing Members" indicates that Azzil is a company formed pursuant to the laws of the state of New York. *See Id.* at 8.  During oral argument on these Motions, Counsel for Azzil represented that Azzil is a limited liability company formed in the state of New Jersey.  At the Court's request, Counsel for Azzil submitted a post-hearing submission which brings finality to this issue and clarifies that "Azzil Granite Materials, LLC was formed under the laws of the State of New York, not New Jersey." *April 29, 2020 Letter*, Adv. No. 19-02285, ECF No. 33.

other, Defendant NYA seeks dismissal of the fraud claim against it.  The Court will address the

Motions in turn.

## II.        Defendants' Joint Motion to Dismiss (ECF No. 24)

As set forth above, the Defendants have filed a joint motion seeking dismissal of Counts I,

II, and III of the Complaint.  Specifically, they seek dismissal of these claims based on improper

venue under Rule 12(b)(3) [3] and based on Plaintiff's failure to state a claim under Rule 12(b)(6).

The Defendants also allege that the Complaint should be dismissed because Plaintiff's claims fail

as a matter of law.  The Court addresses these arguments separately.

### A.  Venue

In the Third Circuit, defendants "bear the burden of showing improper venue in connection

with a motion to dismiss." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982) (citing 1

J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.140[1], at 1319–20 (2d ed. 1982))); *see also Bockman*

*v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012), *Simon v. Ward*, 80 F. Supp. 2d

464, 466-68 (E.D. Pa. 2000) (providing a thorough discussion on which party carries the burden

of establishing or challenging venue in the Third Circuit).  Thus, to succeed in their motion, the

Defendants must satisfy this burden by demonstrating that venue is improper in this Court.  In

evaluating a motion to dismiss under Rule 12(b)(3), courts generally accept the well-pleaded

allegations of the complaint as true. *See, e.g.*, *Bockman*, 459 F. App'x at 158 (collecting cases that

---

[3] In their motion, Defendants do not specifically reference FED. R. CIV. P. 12(b)(3) and, instead, request dismissal
under Rule 12(b)(6), which addresses failure to state a claim.  Although the latter part of their motion is premised on
Plaintiff's failure to state a claim, the initial portion of the Defendants' motion alleges improper venue and, thus,
implicates Rule 12(b)(3).

accept as true the allegations of the complaint unless those allegations are contradicted by the defendants' affidavits); *In re PermaLife Prod., LLC*, 432 B.R. 503, 509 (Bankr. D.N.J. 2010).

The Defendants argue that the appropriate venue for claims under the Carmack Amendment is dictated by the statute, 49 U.S.C. § 11706, which contains special venue provisions and restricts where a civil action may be brought. Defendants acknowledge that venue in this Court is permitted under 28 U.S.C. §§ 1409 and 1391; however, they assert that the special venue provision in 49 U.S.C. § 11706 supersedes the more general venue statutes. *See* Def's' Mem. of Law 6-7, ECF No. 24-1. In approaching this issue, the Court first examines the Carmack Amendment's special venue provision to determine if supports venue for the claims in this judicial district. As explained below, the Court concludes that it does not and proceeds to analyze whether the Carmack Amendment's special venue provision is restrictive or simply permissive. The Court resolves that, indeed, the provision is restrictive and, thus, controls the question of venue. Accordingly, venue is inappropriate in this Court for claims brought under the Carmack Amendment.

### 1.  The Carmack Amendment's Special Venue Provision

Pursuant to Section (d)(2) of the Carmack Amendment,

A civil action under this section may only be brought--

> (i) against the originating rail carrier, in the judicial district in which the point of origin is located;
>
> (ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located; and
>
> (iii) against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.

49 U.S.C. § 11706(d)(2)(A).

In this case, the Defendants have shown that the facts do not satisfy any of these subsections to establish proper venue in this Court.  First, under subsection (i), any Carmack claims against Defendants CP and D&H, as "originating rail carriers," [4]  must be brought "in the judicial district in which the point of origin is located." 49 U.S.C. § 11706(d)(2)(A)(i).  It is undisputed that the shipments in question originated in New York.  Thus, under subsection (i), venue for Carmack claims against CP or D&H are proper only in a judicial district corresponding to the points of origin in New York.

Subsection (ii) of the special venue provision of the Carmack Amendment is applicable to the claims against Defendant NYA, which is a "delivering rail carrier" under the statute.  Under this section, venue may be proper against NYA in "the judicial district in which the point of destination is located" or "in the judicial district in which [Azzil's] principal place of business . . . is located if the delivering carrier operates a railroad or a route through such judicial district." 49 U.S.C. §11706(d)(2)(A)(ii).  It is undisputed that the point of destination for the shipments in this case was in New York.  Further, the Defendants assert, and the allegations of the Amended Complaint confirm, that Defendant NYA provided service to Plaintiff over rail lines located in New York.  The Amended Complaint does not allege that NYA operates a railroad or route through

---

[4] The Court notes that the Amended Complaint alleges that all Defendants are all "delivering rail carriers" as defined by the Carmack Amendment. Am. Compl. ¶ 30, ECF No. 19.  However, Counsel for Azzil clarified on the record during oral argument that Defendants CP and D&H were, in fact, "originating" or "receiving" rail carriers. *See also, e.g.*, *Am. Home Assur. v. A.P. Moller-Maersk*, 13 F. Supp. 3d 277 (S.D.N.Y. 2014), *aff'd sub nom. Am. Home Assurance Co. v. A.P. MollerMaersk A/S*, 609 F. App'x 662 (2d Cir. 2015) ("Under the Carmack Amendment, a receiving rail carrier is the initial carrier, which 'receives' the property for domestic rail transportation at the journey's point of origin.").

this judicial district.  Thus, even if this Court were to find that Azzil's principal place of business is in New Jersey—which it does not—the Defendants have shown that venue for Carmack Amendment claims against NYA is not proper in this Court pursuant to § 11706(d)(2)(A)(ii).

Pointedly, Azzil's Counsel conceded during oral argument that subsections (i) and (ii) do not support venue in this Court.  Rather, Counsel reiterated and clarified its argument that venue is proper in this Court bottomed on the third and final subsection of the special venue provision of the Carmack Amendment.  Specifically, this section states that Carmack claims "against the carrier alleged to have caused the loss or damage," may be brought "in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. § 11706(d)(2)(A)(iii).  Azzil contends that it "performs its administrative functions out of its New Jersey office, even though it is organized in New York." *April 29, 2020 Letter*, Adv. No. 19-02285, ECF No. 33).  Azzil proceeds to argue that economic losses under the alleged breach of contract have been sustained in New Jersey, sufficient to establish venue in this judicial district under the special venue provision of the Carmack Amendment. This Court disagrees.  Instructed by the purpose, history, and text of the Carmack Amendment, the Court determines that the "loss or damage" referenced by the special venue provision of the Carmack Amendment correlates to the loss or damage to *the shipment or goods*, with venue placed properly where those shipment losses allegedly occurred—in New York.

As an initial matter, it is widely accepted that the principal purpose of "the Carmack Amendment [was to] establish[] a uniform federal standard to govern a railroad carrier's liability for 'loss, damage, or injury' to goods while in interstate transit." *AMG Res. Corp. v. Wooster Motor*

*Ways, Inc.*, 796 F. App'x 96, 98 (3d Cir. 2020); *see also, e.g.*, *Rini v. United Van Lines, Inc.*, 104

F.3d 502 (1st Cir. 1997) (noting that the primary purpose of the Carmack Amendment is to achieve

national uniformity in liability assigned to carriers for lost or damaged goods); *Glass v. Crimmins*

*Transfer Co.*, 299 F. Supp. 2d 878, 884 (C.D. Ill. 2004); *Usinor Steel Corp. v. Norfolk S. Corp.*,

308 F. Supp. 2d 510, 517 (D.N.J. 2004) (stating that the purpose of Carmack Amendment is to

achieve uniformity in addressing lost or damaged property).  Thus, it flows that the "loss or

damage" referenced in 49 U.S.C. § 11706(d)(2)(A)(iii) is "loss or damage" with regard to *the*

*goods being shipped*.  Plaintiff has not provided support for its position that consequential financial

damages caused by delayed shipments are the type of losses that can trigger venue under §

11706(d)(2)(A)(iii).

The history of the Carmack Amendment further supports the Court's conclusion.  As

several courts have noted, prior to 1980, plaintiffs were able to bring Carmack claims against rail

carriers in any judicial district where the carrier operated. *See, e.g.*, *Starr Indem. & Liab. Co. v.*

*Luckey Logistics, Inc.*, Case No. 16-01377, 2017 WL 2466505 at *3; *Sompo Japan Ins. Co. of Am.*

*v. Yang Ming Marine Transp. Corp.*, 578 F. Supp. 2d 584, 595 (S.D.N.Y. 2008), *abrogated on*

*other grounds by Sompo Japan Ins. Co. of Am. v. Yang Ming Marine Transp. Corp.*, 578 F. Supp.

2d 584 (S.D.N.Y. 2008).  However, "Congress narrowed Carmack in 1980 to prevent venue that

was 'virtually uncontrollable and frequently inconvenient' for defendants." *Sompo Japan Ins. Co.*

*of Am.*, 578 F. Supp. 2d at 595 (citing H.R. Rep. No. 96–1430 at 102 (1980); *reprinted in* 1980

U.S.C.C.A.N. 4110).  "In most instances, the purpose of statutorily specified venue is to protect

the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial."

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84, 99 S. Ct. 2710, 2716, 61 L. Ed. 2d 464

(1979) (emphasis in original) (discussing proper venue under § 1391).  To adopt Azzil's suggested

interpretation—that venue is proper in this judicial district simply because the company suffered

an economic loss at an administrative office located in this judicial district—would undermine

Congress's amendment and mark a return to litigation in "virtually uncontrollable and frequently

inconvenient" venues. *Sompo*, 578 F. Supp. 2d at 595.

The plain language of the statute also compels rejection of Azzil's suggested interpretation

of the special venue provision.  The statute reads, in relevant part, that a civil action may be brought

"against the carrier alleged to have caused the loss or damage, in the judicial district in which such

loss or damage is alleged to have occurred." 49 U.S.C. § 11706(d)(2)(A)(iii).  In determining what

encompasses the "loss or damage" referenced in this subsection, the Court looks to the remainder

of the statute.  Notably, subsection (a) of the Carmack Amendment explains that "[t]he liability

imposed under this subsection is for the actual *loss or injury to the property*." 49 U.S.C. § 11706(a)

(emphasis added).  Likewise, subsection (b) of the statute discusses a receiving carrier's ability to

seek reimbursement from a delivering carrier who is at fault and provides that the rail carrier "is

entitled to recover from the rail carrier *over whose line or route the loss or injury occurred*." 49

U.S.C. § 11706(b) (emphasis added).  Accordingly, in other sections of the statute, the reference

to "loss or damage" or "loss or injury" is tied to the goods being shipped and the location along

the route where the goods in fact were lost or damaged.  Azzil has not provided any sound

argument as to why the "loss or damage" referenced in the special venue provision portion of the

statute should be read differently.

Moreover, the absence of language in subsection (iii) is equally instructive as to the limited nature of the term "loss and damage" in that provision.  For example, subsection (ii) of the special venue provision allows a plaintiff to bring an action against a delivering carrier "in the judicial district in which the principal place of business of the person bringing the action is located if" certain criteria are met. 49 U.S.C. § 11706(d)(2)(A)(ii).  Thus, had Congress intended to include a plaintiff's principal place of business—or the location of an administrative office[5]—as an appropriate venue under subsection (iii), it could have done so.  The omission of "principal place of business" from the third subsection indicates an intent to exclude the location of a plaintiff's operations as a factor for determining proper venue under that subsection of the statute. *See Russello v. United States*, 464 U.S. 16, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) ("Where Congress includes particular language in one section of statute but omits it in another section of same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations and quotations omitted).

For the foregoing reasons, this Court holds that the "loss or damage" referenced in subsection (iii) of the special venue provision of the Carmack Amendment refers to loss or damage of the goods being shipped.  The Court declines to extend to the definition of loss or damage in this section to the resulting alleged economic losses sustained at the Debtor's administrative office.  Accordingly, venue for a claim under subsection (iii) of the special venue provision of the Carmack is improper in this district.

---

[5] For purposes of this decision, the Court need not, and does not, rule on whether Azzil's principal place of business is New York or New Jersey. The restrictive Carmack Amendment's venue provisions dictate the result herein.

### 2. Carmack Amendment's Special Venue Provision is Restrictive and Controlling as to Venue

As general rule, "venue for any civil litigation brought by or against the debtor or bankruptcy estate is proper in primary district, i.e., the bankruptcy court where case is pending." *In re Tribune Co.*, 418 B.R. 116 (Bankr. D. Del. 2009) (citing 28 U.S.C. § 1409(a)).  Indeed, the Plaintiff asserts that venue is appropriate in this Court pursuant to 28 U.S.C. §§1409 and 1391. *See* Am. Compl. ¶15, ECF No. 19.  However, Congress has established both "general venue" statutes and "special venue" statutes, which explicitly cover venue for particular types of actions. *Compare, e.g.,* 28 U.S.C. § 1391 and § 1406 *with* 49 U.S.C. §11706(d)(2).  Where claims are premised on a statute that contains a special venue provision, a court may be confronted with competing statutory venue charges.

It is well settled that a special venue statute, like the one at issue in this case, will control over the general venue statutes. *See Fourco Glass Co. v. Transmirra Corp.,* 353 U.S. 222, 228–229, 77 S. Ct. 787, 791–792, 1 L.Ed.2d 786 (1957) (citations omitted).  However, where the special venue provisions are merely permissive, the general statutes are often read as supplementing the special statute. *Pure Oil Co. v. Suarez,* 384 U.S. 202, 205, 86 S. Ct. 1394, 1396, 16 L.Ed.2d 474 (1966), 15 Wright & Miller, *Federal Practice and Procedure,* Ch. 8 § 3803.  Alternatively, "[w]hen a special venue statute is restrictive, the action may only be brought in a district permitted by the special venue statute." *Starr Indem. & Liab. Co. v. Luckey Logistics, Inc.*, No. 16-01377, 2017 WL 2466505, at *3 (C.D. Ill. June 7, 2017).  The Court notes that "[s]ituations in which courts find that Congress intended to restrict venue under a special provision so as to preclude the

application of the general venue statute are rare." *Halliburton Energy Servs., Inc. v. NL Indus., Inc.*, No. 05-4160, 2006 WL 3949170, at *7 (S.D. Tex. July 25, 2006); *see also* 1 BANKRUPTCY LAW MANUAL § 2:33 *Limitations on the jurisdiction of the bankruptcy courts—Statutory limitations to jurisdiction* n.1 (5th ed.); *Starr Indem. & Liab. Co. v. Luckey Logistics, Inc.*, No. 16-01377, 2017 WL 2466505, at *3. Nevertheless, this Court is faced with such a rare circumstance. The special venue provisions of the Carmack Amendment are restrictive, so as to preclude application of the general venue provision. *See, e.g.*, *Basic, Inc. v. Norfolk S.*, 684 F. Supp. 123, 124–25 (E.D. Pa. 1988) (finding the special venue provision of the Carmack Amendment to be restrictive).[6] In reaching this determination, the Court again looks to the text and history of the statute.

First, the language of the special venue provision evidences an intent to restrict venue for actions arising under the Carmack Amendment. The statute provides that "a civil action under this section may *only* be brought" in a venue as delineated in the statute. 49 U.S.C. §11706 (d)(2)(A) (emphasis added). The term "only" indicates restriction or exclusivity. *See, e.g.*, *Starr Indem. & Liab. Co. v. Luckey Logistics, Inc.*, 2017 WL 2466505, at *3. Likewise, as discussed above, the legislative intent behind the 1980 amendment to the statute was to limit venue for actions against rail carriers. *See* H.R. Rep. No. 96–1430, at 102 (1980). Therefore, it is evident that Congress intended to restrict Carmack Amendment claims against railways to the venues designated in its

---

[6] Although the court in *Basic, Inc. v. Norfolk S.*, 684 F. Supp. 123, 124 (E.D. Pa. 1988) analyzed the text of § 11707(d)(2)(A), that statute was the predecessor to the statute at issue in this case, § 11706(d)(2)(A), and contains identical language. *See* Pub.L. 104-88 § 102(a) (generally amending prior section 11707 and reincorporating into 11706, 14706, and 15906 of title 49).

specific venue provision.  As a result, this Court finds that the specific venue provision of 49

U.S.C. § 11706(d)(2)(A) governs this action.

Having ruled that there is no basis for venue in this district under § 11706(d)(2)(A), this

Court may dismiss the entire action or transfer the case to any district or division where it could

have been brought. *See* 28 U.S.C. § 1406.  The Court declines to transfer the claims and, instead,

dismisses the entire action, without prejudice.  In making its decision, this Court considers the

other bases for dismissal of Azzil's claims and, as a courtesy to the parties, the Court discusses

below the issues which compel the Court to dismiss rather than transfer.

### B.  Rule 12(b)(6)

The Defendants also seek dismissal of Azzil's Carmack Amendment claims under FED. R.

CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual

allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Fleisher v.*

*Standard Ins.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  When reviewing a motion under 12(b)(6), a

court must "view the facts alleged in the pleadings and the inferences to be drawn from those facts

in the light most favorable to the plaintiff, and judgment should not [be] granted unless the moving

party has established that there is no material issue of fact to resolve, and that it is entitled to

judgment in its favor as a matter of law." *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)

(citation omitted); *see also Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).  A claim has

"facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Here, Defendants argue that Azzil fails

to state a plausible claim for relief under the Carmack Amendment.  Although the Court makes no

determination as to the merits of the Amended Complaint, the Court has concerns as to whether

there are sufficient factual allegations supporting a claim under the Carmack Amendment.

"To establish a prima facie case against a common carrier under the Carmack Amendment

to the Interstate Commerce Act, 49 U.S.C. § 11706, a plaintiff must prove the following three

elements: (1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods

before delivery to their final destination, and (3) the amount of damages." *Beta Spawn, Inc. v. FFE*

*Transportation Servs., Inc.*, 250 F.3d 218, 223 (3d Cir. 2001) (footnote and citations omitted).

However, the Amended Complaint is devoid of any allegations regarding the condition of the

goods upon delivery to the Defendants, suggesting that the first element of a claim under the

Carmack Amendment is unsatisfied.  Likewise, Azzil does not recite an amount for damages and,

instead, only vaguely refers to "significant" or "substantial" losses. *See e.g.*, Am. Compl. ¶ 19, 22,

50, 62-63, 67-68, 72-73, ECF No. 19.  Thus, it is unclear whether the third and final element of a

claim under the Carmack Amendment is satisfied.  With respect to the second element, Azzil does

not allege that the goods being shipped were damaged.  Instead, Azzil asserts that it "suffered

significant losses as a result of [the Defendant's] delay or failure to timely deliver Azzil railcar

shipments to end users and customers." *Id.* at ¶ 62, 67, 72.  Unquestionably, delays in shipping can

satisfy the damage element of a claim under the Carmack Amendment. *See, e.g.*, *Paper Magic*

*Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003); *Am. Home Assur. Co. v.*

*RAP Trucking, Inc.*, No. 09-80020-CIV, 2010 WL 547479, at *4 (S.D. Fla. Feb. 9, 2010); *Am.*

*Rock Salt Co., LLC v. Norfolk S. Corp.*, 387 F. Supp. 2d 197, 201 (W.D.N.Y. 2005).[7]  However, Azzil does not explain with any specificity the extent of the delays or how these delays resulted in losses.  Although Azzil's written submissions refer to a contract requirement that the Defendants complete each round trip with each railcar within 15 days, *see e.g.* Am. Compl. ¶ 27, the parties clarified during oral argument that this 15-day limitation is not a contractual provision.  Rather, Azzil arrives at that figure based on the number of railcars it possessed and its own contractual obligation to operate a minimum volume of 1,500 cars per year.

The Court acknowledges that FED. R. CIV. P. 8(a) does not require that a complaint contain detailed factual allegations.  Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), factual allegations must be capable to raise a plaintiff's right to relief above the speculative level, such that it is "plausible on its face."  *See Fleisher v. Standard Ins.*, 679 F.3d 116; *George E. Warren Corp. v. Colonial Pipeline Co.*, No. 17-01205, 2017 WL 3038251, at *2 (D.N.J. July 17, 2017).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[7] The Court's observation that a delay in shipping can constitute "damage" in the second element of a prima facie claim under the Carmack Amendment and that the "amount of damages" in the third element can be satisfied by economic damages caused by a delay in shipping is not inconsistent with this Court's holding that the "damages" referenced in the special venue provision of the statute cannot be satisfied by economic damages felt by the company at a specific office or location. *See* 49 U.S.C. § 11706(d)(2)(A)(iii).  As discussed *supra*, the latter reference to "damage" is a special venue provision that is tied to the location of the injury or loss and is specifically intended to restrict venue.  The inquiry as to where the "damage" occurred for purposes of establishing venue does not change where, as here, the "damage" alleged is "delay."  In contrast, consequential economic damages caused by the "damage" or "delay" may be considered for purposes of calculating the amount damages to which a plaintiff is entitled. *See, e.g.,Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003) (collecting cases and discussing proper measure of damages in the event that goods are damaged or delivery is delayed).

In this case, Azzil fails to provide even a formulaic recitation of the elements of a cause of action under the Carmack Amendment, let alone factual allegations which suggest entitlement to relief. Even accepting the allegations of the Amended Complaint as true, as courts must, *see Davis*, 824 F.3d at 341, Azzil offers only conclusory and vague allegations along with limited—and admittedly inaccurate—information.[8] Accordingly, this Court questions whether a court addressing a motion to dismiss under Rule 12(b)(6) would be able to draw the reasonable inference that the Defendants are liable necessary to survive such a motion.

## C. Written Notice Requirement

Finally, the Defendants posit that Azzil's Carmack Amendment claims would fail due to Azzil's failure to file a notice or claim for damages. Indeed, "[u]nder the implementing regulations of the Carmack Amendment, a claimant must file notice of loss or damage with the carrier within the time specified on the bill of lading, 49 C.F.R. § 1005.2(a), which may not be less than nine months, 49 U.S.C. § 14706(e)(1)." *S & H Hardware & Supply Co. v. Yellow Transp., Inc.*, 432 F.3d 550, 554 (3d Cir. 2005); *see also* 49 U.S.C. § 11706(e); *Usinor Steel Corp. v. Norfolk S. Corp.*, 308 F. Supp. 2d 510, 518–19 (D.N.J. 2004). Courts generally have required strict compliance with claim filing time limitation provisions. *See Usinor Steel Corp.*, 308 F. Supp. at 518–19 (collecting cases holding that a claim under the Carmack Amendment is barred unless the

---

[8] Azzil pleaded in the Amended Complaint that it is a New Jersey limited liability company, *see* Am. Compl. ¶ 8, ECF No. 19; however Azzil later clarified that it is a limited liability company under the laws of the state of New York, *see* ECF No. 33. Azzil also pleaded in the Amended Complaint that all Defendants are "delivering rail carriers as defined by the Carmack Amendment." Am. Compl. ¶ 30. However, Azzil acknowledged during oral argument that Defendants CP and D&H are actually "receiving" or "originating" carriers. Finally, Azzil alleged in the Amended Complaint that the parties' contract required the Defendants to complete each round trip with each railcar within 15 days, *see id.* ¶ 27. Azzil later clarified that the 15-day limitation was not a contractual provision and, instead, was calculated based on extrapolation of its own minimum-volume commitment and the number of rail cars it operated.

shipper complies with the nine-month filing requirement).   "In addition to enforcing the time

limitations, courts have also required compliance with written claim filing requirements as stated

under the regulations." *Id.*   In this case, the Contract contained a provision which required Azzil

to notify the Defendants of loss or damage within nine months. *See* Ex. A to Compl. 25, ECF No.

1.  Azzil does not allege that it submitted any written claims or notices regarding the alleged delay

or damage within this time period.   The Defendants contend that Azzil filed "*no* claims

whatsoever." Defs.' Mem. 20, ECF No. 24-1 (emphasis in original).   Moreover, the Contract

expired in January 2019; therefore, the time period for filing a claim has expired and Azzil can no

longer satisfy this prerequisite.

In response, Azzil asserts that it "did not have to file a claim with CP as a prerequisite to

seeking redress in this Court because the Amended Complaint asserts a claim for a complete breach

and full non-performance of the parties' contract and, therefore, provisions in the contract

pertaining to filing a claim for a single lost or damaged shipment do not apply." Azzil's Omnibus

Opp'n 13, ECF No. 28.   In support of this proposition, Azzil cites to cases interpreting state

contract law which hold that one party's complete breach of a contract discharges the other party's

obligations. *Id.* at 13 n.1.   As an initial matter, it is unclear whether the factual allegations of the

Amended Complaint demonstrate a "complete breach of contract."   Nevertheless, even assuming

a "complete breach," this argument would likely fail because the Carmack Amendment is

specifically intended preempt state law remedies. *See, e.g.*, *Phoenix Ins. Co. v. Norfolk S. R.R.

Corp.*, No. 11-00398, 2014 WL 2008958, at *16 (D.N.J. May 16, 2014) ("It is well settled that

Carmack preempts all state law causes of action against rail-carriers."); *Usinor Steel Corp*, 308 F.

—

Supp. 2d at 517; *see also Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014) (addressing extension of Carmack Amendment applicable to motor carriers and holding that the Carmack Amendment preempts all state or common law remedies). As explained, a plaintiff must first file a written notice or claim with the carrier within the specified time period as a condition precedent to filing a lawsuit under the Carmack Amendment. The Amended Complaint does not allege that Azzil satisfied this notice requirement, nor does Azzil assert that an exception to this strict rule applies. *See, e.g.*, *Usinor Steel Corp.*, 308 F. Supp. 2d at 519 ("Exceptions to the strict compliance rule in both the time limits and the written claim requirements have been recognized.").

Azzil further states that in May 2019 it, "in good faith, attempted to invoke the mediation clause" under the Contract to resolve these issues. Azzil's Omnibus Opp'n 13 n.1, ECF No. 28. To the extent Azzil mentions this fact to imply that it satisfied the written notice requirement by invoking mediation, the Court remains unconvinced. First, the Amended Complaint does not specify when any specific delay or issue occurred; therefore, it is uncertain whether May 2019 is within the nine-month time period. Moreover, case law suggests that Azzil's attempt to mediate is insufficient to satisfy the Carmack Amendment's written notice requirement. The Third Circuit has observed that "[t]he purpose of the written claim requirement is to insure that the carrier may promptly investigate claims, and not to permit the carrier to escape liability." *Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 411 (3d Cir. 2008) (quoting *S & H Hardware & Supply Co,* 432 F.3d at 554)). "The crux of the notice is whether it apprises the carrier of the basis for the claim and that reimbursement will be sought." *S & H Hardware & Supply Co.*, 432 F.3d at 554. Even accepting

as true Azzil's assertion that it attempted to mediate issues, it is unclear whether there is sufficient information in the Amended Complaint from which a court could draw a reasonable inference that the notice requirement has been satisfied.

Pursuant to the regulations promulgated by the Carmack Amendment, a proper notice must "be communicated in writing or, where agreed to by the parties, electronically; contain facts sufficient to identify the damaged or lost shipment; assert liability for alleged loss, damage, injury, or delay; and demand payment of a specified or determinable amount of money." *Id.* (citing 49 C.F.R. § 1005.2(b)). Further, the parties' contract delineates specific documents and information that must be submitted with a notice of damage or loss. *See* Ex. A to Compl. 25, ECF No. 1. Although "[c]ourts in this circuit construe the written claim requirement liberally, and may require substantial performance rather than strict compliance with that requirement," the allegations of the Amended Complaint—and the allegation that Azzil attempted mediation—are likely insufficient to satisfy the notice requirement. *Raineri v. N. Am. Van Lines, Inc.*, 906 F. Supp. 2d 334, 341 (D.N.J. 2012). Accordingly, the Court has concerns that Azzil's Carmack Amendment claims may be subject to dismissal for failure to satisfy a condition precedent to recovery.

## III.   NYA's Motion to Dismiss

Count IV of the Amended Complaint alleges fraud against NYA. In its motion, NYA seeks dismissal of Count IV due to Azzil's failure to plead the fraudulent inducement claim with the requisite level of particularity. NYA also asserts that any fraudulent inducement claim must fail because Azzil expressly agreed that it would not rely on statements made by NYA. Finally, NYA asserts that venue for the fraud claim is improper. The Court will first address the issue of venue.

As discussed previously, a defendant seeking dismissal for improper venue under Rule 12(b)(3)[9] bears the burden. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716 (3d Cir. 1982); *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157 (3d Cir. 2012). Here, NYA contends that the fraudulent inducement claim is not properly brought in this Court because the parties' contract contained a forum selection clause. Indeed, it is undisputed that the parties contractually agreed to venue in New York. However, whether venue is "wrong" or "improper" depends exclusively on whether the court in which case was brought satisfies requirements of federal venue laws, irrespective of any forum-selection clause that may apply. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877–79 (3d Cir. 1995) (holding that a forum-selection clause does not render venue improper in an otherwise proper forum).

In this case, Count IV of the Amended Complaint—Azzil's claim for fraudulent inducement—is sufficiently related to the bankruptcy proceeding such that venue is proper in this judicial district. *See* 28 U.S.C. § 1409(a) ("[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."). The forum selection provision, alone, does not render venue improper in this Court and does not warrant dismissal of Count IV under Rule 12(b)(3). *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 61, 134 S. Ct. 568, 580, 187 L. Ed. 2d 487

---

[9] The Court notes that NYA did not directly cite Rule 12(b)(3) in its motion. Nevertheless, NYA expressly seeks dismissal based on improper venue in its moving papers. *See* NYA's Mem. in Support of Mot. to Dismiss 11, ECF No. 23-1. Further, the case cited by NYA analyzes a motion to dismiss under Rule 12(b)(3). *Id.* (citing *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 678 (D.N.J. 1993) (addressing motion dismiss for lack of venue pursuant to FED. R. CIV. P. 12(b)(3) based upon the forum selection clauses)).

(2013) (holding that Rule 12(b)(3) is not proper mechanism to enforce a forum-selection clause); *TriState HVAC Equip.*, 752 F. Supp. 2d 517 (E.D. Pa. 2010) (denying movant's motion to dismiss under Rule 12(b)(3) because movant relied only on the forum selection clause and failed to demonstrate that venue was improper).

Although NYA's blanket assertions of improper venue fail, the forum selection clause is nevertheless entitled to great weight, and is considered presumptively valid. *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 85 (3d Cir. 2006); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972)). "While courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue, and in such a case the plaintiff bears the burden of demonstrating why it should not be bound by its contractual choice of forum." *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517 (E.D. Pa. 2010), *order amended on reconsideration*, No. 10-1054, 2011 WL 204738 (E.D. Pa. Jan. 21, 2011). Thus, NYA having raised the issue of the forum selection clause, the burden now shifts to Azzil "to make strong showing that it should be set aside." *M/S Bremen*, 407 U.S. at 15.

During oral argument, Counsel for Azzil acknowledged the existence of the forum selection clause in its contract with NYA and argued simply that if this Court exercises venue over the Carmack Amendment claims, then this Court should exercise pendent venue over the fraud claim. *See also* Azzil's Opp'n 8, 9-10, ECF No. 29. "Pendent venue" is an exception to the general rule that venue must be established for each cause of action and "allows a court to hear a claim

that would otherwise not have proper venue, provided it is joined in a suit with a claim that is

properly venued, and the claims arise out of a common nucleus of operative fact." *Atcom Support

LP v. Maria*, No. 15-28, 2016 WL 4118914, at *6 (D. Del. Aug. 1, 2016), *report and

recommendation adopted*, No. 15-28, 2016 WL 5867407 (D. Del. Oct. 4, 2016); *see also Dockery

v. Heretick*, No. 17-4114, 2019 WL 2122988, at *14 (E.D. Pa. May 14, 2019) (collecting cases).

Having previously determined that venue for Azzil's Carmack Amendment claims is improper in

this judicial district, there is no properly venued claim to which pendent venue of Count IV could

attach.  Moreover, as explained, proper venue does not negate the existence of a forum selection

clause.  Rather, to sidestep the presumptively valid forum selection clause in this case, Azzil must

demonstrate why it should be set aside. *See M/S Bremen*, 407 U.S. at 15.  Here, Azzil has failed to

make a strong showing that not be bound by its contractual agreement. *See, e.g.*, *TriState HVAC

Equip., LLP*, 752 F. Supp. 2d 517.  Thus, the forum selection provision of the parties' agreement

controls.

Further, the Third Circuit has made clear that dismissal under Rule 12(b)(6) is a permissible

means of enforcing a forum selection clause that allows suit to be filed in another federal forum.

*Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) (citing *Crescent Int'l,

Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988)); *see also Atl. Marine Const.

Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 61, 134 S. Ct. 568, 580, 187 L. Ed. 2d

487 (2013) (noting, without deciding, the possibility that defendants could use Rule 12(b)(6) to

enforce a forum-selection clause).[10]  The present case involves precisely the type of forum

---

[10] To the extent a forum selection clause specifies a non-federal forum, "dismissal is the sole option." *Wall St.
Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 87 (3d Cir. 2006).

selection clause addressed by the Third Circuit in *Salovaara*.[11]  This Court acknowledges that "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." *Salovaara*, 246 F.3d at 299.  Nevertheless, "when a defendant moves under Rule 12, a district court retains the judicial power to dismiss." *Id.*.  For the reasons that follow, this Court decides to exercise that power and dismiss Count IV rather than direct a transfer.

At the outset, the Court notes that a claim under state law for fraud is not a core proceeding. Thus, if this Court were to keep Count IV, it would be unable to make a final ruling and, instead, would have to submit findings of fact and conclusions of law to the district court for its review. *See, e.g.*, *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34, 134 S. Ct. 2165, 2172, 189 L. Ed. 2d 83 (2014) ("If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment.").  These judicial economy considerations provide further support for dismissal or transfer.  As with the Carmack Amendment claims, however, transfer is not a viable option given this Court's serious concerns regarding the sufficiency of Azzil's fraud claim, as pleaded.

---

[11] Pursuant to Section 29 (k) and (l) of the Licensing Agreement between NYA and Azzil,  any matter related to "the interpretation, construction, validity or enforcement of this Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York" and the parties submit themselves "to the jurisdiction of the courts of the State of New York and, to the extent applicable, *the federal courts* of the United States of America located in the State of New York." Ex. B to the Cert. of Kylg G. Kunst 22, ECF No. 23-4 (emphasis added). Similarly, the forum selection clause in *Salovaara* "specified that suit could be brought either in state courts located within New York County or in the United States District Court for the Southern District of New York." *Salovaara*, 246 F.3d at 298 (3d Cir. 2001).

As NYA points out, "[a] fraudulent inducement claim is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which require a plaintiff to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 525 (S.D.N.Y. 2018) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).  The allegations in the Amended Complaint with respect to the fraud claim are vague and conclusory.  This Court doubts that they establish the facial plausibility necessary to survive a motion to dismiss under 12(b)(6), *see Iqbal*, 556 U.S. 662, let alone satisfy the heightened pleading standards under Rule 9(b).

Finally, this Court has dismissed Counts I through III of the Amended Complaint and instructed that these claims will have to proceed in another judicial district.  Given that all Azzil's claims arise out of the same set of operative facts, as Azzil alleges, it makes practical sense to likewise dismiss Count IV so that Azzil may bring these claims together.

## IV.    Conclusion

For the reasons set forth above, the Court determines that venue for Counts I, II and III of the Amended Complaint is improper in this judicial district and the Defendants' Joint Motion to Dismiss (ECF No. 24) will be granted.  Additionally, the Court determines that the parties' forum selection clause controls and NYA's Motion to Dismiss Count IV (ECF No. 23) will be granted. Given the deficiencies of the Amended Complaint, and for reasons of judicial economy, the Court

is not inclined to transfer these causes of action. All claims of the Amended Complaint are hereby dismissed without prejudice. The Court will enter a form of Order consistent with this Opinion.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: May 12, 2020